The STATE of Oklahoma, Appellee,

v.

Pernetha Gay WEST, Defendant,

and

Gary Williams and American Bankers Insurance Company, Appellants.

No. 72325.

Court of Appeals of Oklahoma, Division 2.

July 31, 1990.

Cathy Stocker, Dist. Atty., Brad D. Leverett, Asst. Dist. Atty., Enid, for appellee.

Ronald G. Franklin, Johnston, Franklin & Hladik, Law Offices, Enid, for appellants.

BRIGHTMIRE, Chief Judge.

An appearance bond was executed on behalf of a bonding company by one purporting to act as its special agent pursuant to a forged power of attorney. The bailed defendant absconded, giving rise to the ultimate question of whether the bonding company is liable as surety on the forfeited bond.

The trial court held that the company is liable and rendered a judgment against it for the amount of the bond. We hold, however, it is not and reverse the judgment.

I

The operative facts are not disputed. The parties stipulated that one Sharon Williams was a special agent who occasionally executed bail bonds on behalf of American Bankers Insurance Company's general agent, Gary Williams. In each instance she did so pursuant to specific authority granted in a power of attorney which was numbered and identified the principal, the court involved and the maximum authorized amount of an appearance bond to be issued for a named defendant.

On September 22, 1986, Power No. AB5–00411724 was issued authorizing Sharon Williams to post bond for one Rocky Dean Proctor in the municipal court. Proctor appeared as required and his bond was exonerated September 30, 1986.

A few months later Sharon Williams executed a $750 American bail bond to assure the appearance of one Pernetha West in district court. Attached to this bond was the Proctor power of attorney which had been altered by "whiting out" the data pertaining to the Proctor bond and inserting in its place the date of July 1, 1987, along with other data necessary for authorizing a $750 appearance bond for West. The forgery was obvious and can be detected even on the reduced copy set out below.[1]

1.

And though the power of attorney recited that "[t]his power is void if altered or erased," the court clerk nevertheless accepted it.

Sharon Williams retained all of the premium and did not report the bond issuance to American or Gary Williams. Defendant West failed to appear as required, of course, and the trial court ordered the bond forfeited. American and its general agent moved the court to set the forfeiture aside as to them on the ground Sharon Williams had no authority to issue subject bond on behalf of American.

The state admitted that Sharon Williams was trying to cheat American but took the position that in executing the West bond she had apparent authority to do so.

The trial court found that the power of attorney for the West bond had been altered and that the power of attorney said on its face that it is void if altered, but concluded, nevertheless, that American was liable on the bond because the "company has given her [the special agent] the power to act as their [*sic*] agent in any matter that concerns a bail bond," and therefore it is liable on the bond.

## II

So the question is whether the holding of the trial court is correct.

The state says it is because under the doctrine of respondeat superior American is liable for every act its agent "committed [on its behalf] even if said acts were wrongful." And, continues the state, "a principal is liable to third persons for all acts done by his agent on his behalf if the agent's act is within the actual or apparent scope of his agency."

■■■■ Certain principles of law governing disclosed principal situations are well established. One is that a limited power of attorney, *e.g.*, to execute an appearance bond, as in this case, creates a special agency and is to be strictly construed. *In re Estate of Rolater*, 542 P.2d 219 (Okl. App.1975). One dealing with an agent must discover at his peril whether the assumed agency is general or special and, if

the latter, whether the pretended agent has authority to perform the proposed act. *American Body & Trailer Co. v. Higgins*, 195 Okl. 349, 156 P.2d 1005 (1944); *Kindl v. Doss*, 167 Okl. 383, 29 P.2d 946 (1934); *McDonald v. Strawn*, 78 Okl. 271, 190 P. 558 (1920). And one who deals with an agent knowing that his authority is circumscribed and that the agent's act transcends the agent's powers cannot hold the agent's principal on the theory of apparent authority. *Mid-Continent Petroleum Corp. v. Wilhoit*, 270 P.2d 645 (Okl.1954).

While not precisely on all fours with the instant case, the United States Court of Appeals for the Tenth Circuit in *DeBoer Construction, Inc. v. Reliance Insurance Co.*, 540 F.2d 486 (10th Cir.1976), dealt with an analogous factual situation in a manner that is helpful here. There a general contractor sought damages against an independent insurance agency and a commercial surety after the latter denied liability on a $925,000 construction contract surety bond fraudulently issued by their agent whose authority was limited to $500,000 in his power of attorney. The trial judge, *inter alia*, gave the contractor judgment against both defendants. The Court of Appeals, however, reversed that part of the judgment in excess of $500,000, holding that the contractor was guilty of negligence in failing to read the special agent's power of attorney and to discover his lack of authority. The court disposed of the contractor's "apparent authority" contention with the following legal rationale, which appears to correctly mirror the law of this state applicable to the case at bar:

"Regardless of whether this evidence is sufficient to establish apparent authority beyond that stated in the power of attorney, we have no doubt DeBoer is bound by the $500,000 limitation in his power of attorney. '[T]hose who deal with an agent knowing that he is authorized to act by virtue of a power of attorney are bound to ascertain and know the character and extent of the power of attorney under which he assumes to act.' 3 Am.Jur.2d *Agency* § 81 (1962); *accord,* Restatement 2d of Agen-

cy § 167 (1958). Comment *a* to the Restatement section explains the rule as follows:

> [I]f a person has means of knowledge reasonably open to him as to the limits of the agent's authority, he cannot hold the principal unless he uses ordinary diligence to ascertain them, even in those situations in which a principal is otherwise held although the agent goes beyond his authority. He has means of knowledge if he knows or has reason to know that the authority is evidenced by a document open to and intended for his inspection.

The rule is similarly stated in the Oklahoma statute defining constructive notice.

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. Okl.Stat.Ann. title 25, § 13 (1971)."

Applying the foregoing principles of law to the facts at hand, it becomes clear that there are at least two serious flaws in the state's argument.

■ First, we are dealing with a special agent whose authority to execute the bond was known by the court clerk to be specified in a numbered power of attorney. It was this document on which the court clerk had to rely for ascertaining the authority of the special agent to execute the bond and ultimately the validity of the bond itself. Since the power of attorney was attached to the tendered surety bond and it was obvious on its face that it had been altered, the court clerk by the express terms of the powergranting document had a duty to reject the bond because it was not executed by one holding a valid power of attorney.

Second, the state's argument assumes Sharon Williams executed the West bond on behalf of American which, of course, she did not; she acted solely for herself in executing the bond, kept the fee and apparently all would have gone undetected had West not jumped bail.

III

The order of December 6, 1988, denying American's application to vacate the forfeiture judgment against it is reversed and the judgment on the void bond against American rendered August 30, 1988, in the amount of $750 is vacated. Costs are taxed against the appellee.

REIF, P.J., concurs.

MEANS, J., concurs in part and dissents in part.

MEANS, Judge, concurring in part and dissenting in part.

I concur in reversing the judgment of forfeiture but dissent from any decision concerning taxation of costs.

The taxation of costs is not an issue in this case. The taxation of costs occurs automatically by the clerk pursuant to statute and court rule. *Owens v. Clark*, 177 Okl. 519, 61 P.2d 201 (1936).